Brough, J.;
Mantón, J., concurs; Chittenden, J., concurs in a separate opinion; Johnson, J., dissents.
On the 25th day of June, 1909, by a decree of the Supreme Court of this state, the respondent, Charles A. Thatcher, was denied the right and privilege of longer practicing law in the state of Ohio. Some time thereafter the respondent made application to the Supreme Court for a modification of this- decree, which application was denied. On April 18th, 1911, the General Assembly of the state of Ohio passed an act, which later-became a law, which, by its terms, authorized and empowered Charles A. Thatcher to appear as an attorney and counselor at. law in all the courts of record of the state of Ohio, and all.the rights and privileges of an attorney and counselor at law were *274 granted to and conferred upon him by said act. The said act further provided, “On his taking an oath of office before any person authorized to administer an oath, the said courts are directed to receive him as such attorney and counselor at law.”
On the 16th day of January, 1912, Charles A. Thatcher, the respondent, appeared before a branch of this court, as one of the attorneys for the plaintiff in the ease of McG-ough against the receiver of the Wheeling & Lake Erie Eailroad Company. The attorney for the receiver objected to the respondent appearing as an attorney in the trial of the cause. The respondent insisted upon his right to appear, notwithstanding the objection. Thereupon the court, with all four judges sitting, ordered that the case on trial be continued and the matter of the objection be set specially for hearing. Upon the date set the matter was ordered to be separately docketed and heard independently of the case in which the objection was raised. The matter was thereupon heard by the court and taken under advisement.
Eespondent denies the right of the court to determine, in this proceeding, the question of his right to practice under the special aet of the Legislature. The respondent having presented himself at the trial table in a cause regularly assigned and called for trial, and having claimed the right to appear before this court as a member of its bar, and that right having been questioned, it becomes the duty of the court to determine his standing as an attorney. And the fact that the constitutionality of an act of the Legislature is necessarily involved in a determination of this question can not, in the opinion of the court, 'alter the situation. Eespondent insists that by virtue of the legislative enactment referred to, he has a right to appear before the court as a.n attorney, and the court must determine the question.
The question thus presented to the court in nowise involves an inquiry into the fitness of the respondent to occupy the office or position of an attorney. The sole question which we are called upon to consider, and which we have considered and will pass upon, is the effect to be given to the aet of the Legislature authorizing and permitting respondent to appear before this court as an attorney and counselor at law under the cireum *275 stances. This necessarily involves a determination of the constitutionality of the act in question.
Is this act in conflict with the Constitution?
The Constitution of the state is its fundamental law. It is the body of rules and principles enacted by the people themselves, and under which they consent to live and be governed. Until abrogated by the people, it is the paramount law. The people themselves adopt the Constitution by referendum vote, and no department of the state government can do any act in contravention of its provisions.
Judge Cooley, in his great work on “Constitutional Limitations,” says:
“A constitution is sometimes defined as the fundamental law of a state, containing the principles upon which the government is .founded, regulating the division of the sovereign powers, and directing to what persons each of these powers is to be confided, and the manner in which it is to be exercised. Perhaps an equally complete and accurate definition would be, that body of rules and maxims in accordance with which the powers of sovereignty are habitually exercised.”
And further, page 5:
“In American constitutional law, the word ‘Constitution’ is used in a restricted sense, as implying the written instruments agreed upon by the people of the Union or of any one of the states as the absolute rule of action and decision of all departments and officers of the government in respect to the points covered by it, which must control until it shall be changed by 'the authority which established it, and in opposition to which any act or regulation of any such department or officer, or even of the people themselves, will be altogether void.”
Where an act of the Legislature is in conflict with, or is at variance with the. Constitution, which is the fundamental law, the Constitution must be preferred. In other words, the intention of the people as expressed in the Constitution must be preferred to the legislative act, which is merely an expression of-the intention of their agents; and wherever the will of the Legislature, declared in its enactments, stands in opposition to that of-the people as declared in the Constitution, the court, in de *276 termining between the two, must be governed by the Constitution rather than by the act of the Legislature.
Again quoting the language of Judge Cooley:
"The will of the people as declared in the Constitution is the final law, and the will of the Legislature is law only when it is in harmony with, or at least is not opposed to, that controlling instrument (the Constitution), which governs the legislative body equally with the private citizen.” Constitutional Limitations, page 6.
Article I, Section 2, of the present Constitution of Ohio provides:
“All political power is inherent in the people; government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary; and no special privileges or immunities shall ever be granted that may not be altered, revoked or repealed by the General Assembly. ’ ’
Article II, Section 1, provides:
“The legislative power of this state shall be vested in the General Assembly. It shall consist of a Senate and House of Representatives.”
Article III, Section 1, provides:
“The executive department shall consist of a Governor, Lieutenant-Governor, Secretary of State, Auditor of State, Treasurer of State, and an Attorney-General, who shall be elected,” etc.
Article IY, Section 1, provides:
‘ ‘ The judicial power of the state is vested in a Supreme Court, circuit courts, courts of common pleas, courts of probate, justices of the peace, and such other courts, inferior to the Supreme Court, as the General Assembly may from time to time establish.”
Article II, Section 32, provides:
“The General Assembly shall grant no divorce, nor exercise any judicial power not herein expressly conferred.”
No judicial power is conferred by the Constitution upon the General Assembly which is material in determining the questions here involved.
*277 These provisions of the Constitution divide the powers to be exercised into three separate and distinct classes or departments— the legislative, executive and judicial. The right of each class or department to do any specific act is determined by the question whether that act is in its nature legislative, executive or judicial. Every power exercised by the government must fall within one of these classes, and it can not be exercised by a department of the government to which it does not belong. By virtue of this arrangement, as stated by Judge Cooley, each department is made to constitute a restraint upon the actions of the others, to keep them within proper bounds, and to prevent hasty and improvident action.
In this country the legislative authority is subjected to the control arising .from the Constitution. From the Constitution, the legislative department, as well as every other department of the government, derives its power. When the legislative department attempts to exercise a power conferred by the Constitution upon one of the other departments, and, the matter of its right to do so comes regularly before a court, it is the duty of the court, in its exercise of the judicial power conferred by the Constitution, to determine the question as to where the power rightfully belongs, and if wrongfully exercised by the legislative department, to declare the act in controvention of the Constitution, that is. to declare it unconstitutional.
Is the power to authorize an individual to appear as an attorney and counselor at law in the courts of this state a judicial power? If it is, then the legislative enactment now under consideration, and by virtue of which respondent claims the right to practice, is a usurpation of judicial power by the legislative department of the state, and is unconstitutional. This question has been before the courts of last resort of many of the states, and we are not without authority in determining it. The question has arisen, both in relation to the admission and disbarment of attorneys, and from the reasoning, the two powers are so closely allied as to constitute but the exercise of the same general power.
“Their (attorneys) admission, or their exclusion, is not the exercise of a mere ministerial power. It is the exercise of a *278 judicial power, and has been so held in numerous cases. It was' so held by the Court of Appeals of New York in the Matter of the Application of Cooper for Admission," said the court in Ex Parte Garland, 4 Wall. (U. S.), 333.
The case of Cooper, above referred to by the Supreme Court, is one strongly relied upon by respondent to sustain the position that the act in question is constitutional. In that case the court says:
“Attorneys and counselors are not only officers of the court, but officers whose duty relates almost exclusively to proceedings' of a judicial nature, and hence their appointment may with propriety be entrusted to the courts, and the latter, in performing this duty, may very justly be considered as engaged in the exercise of their appropriate judicial functions." In re Cooper, 22 New York, 81.
In In re Day, 181 Ill., 90, the court say:
“The function of determining whether one who seeks to. become an officer of the courts, and to conduct eases therein, is sufficiently acquainted with the rules established by the Legislature and the courts governing the rights of parties, and under which justice is administered, pertains to the courts themselves. * * # The order of admission is the judgment of the court that he possesses the requisite qualifications. If the Legislature by inadvertence, as in this case, assumes the exercise of a power belonging to the judicial department, it should only be necessary to call its attention to the restraint imposed by the Constitution."
While the provision of the Illinois Constitution relating to the distribution of power is not identical with the provisions of our state Constitution, the result arrived at is the same, and there is no reason why the language above quoted should not be applied to the case at bar.
The Supreme Court of Pennsylvania, in 1888, deciding the case of Joseph P. Splane, said:
“It was decided in Brackenrddge’s case, 1 S. & R., 187, as long ago as 1814, that the admission of an attorney by the court of common pleas is a judicial, not a ministerial act, and for this reason this court refused a mandamus in that case. The same reason would justify us in refusing it in this.”
*279 And the court said further:
“If there is anything in the Constitution that is clearly beyond controversy, it is that the Legislature does not possess judicial powers. They are lodged exclusively in the judiciary as a co-ordinate department of the government.”
In the case of Hanson v. Grattan, 84 Kans., 843, the court say:
“The power to admit applicants to the practice of the law is judicial and not legislative.”
The court in In re Goodell, 39 Wis., 232, say:
“The Constitution makes no express provision for the bar. But it establishes courts amongst which it distributes all the jurisdiction of all the courts of Westminster Hall in equity and at common law. And it vests in the courts all the judicial power of the state. The constitutional establishment of such courts appears to carry with it the power to establish a bar to practice in them. An admission to the bar appears to be a judicial power. It may therefore become a veiy grave question for adjudication here, whether the Constitution does not entrust the rule of admissions to the bar, as well as the expulsion from it, exclusively to the discretion of the courts.”
The question above propounded by the Supreme Court of Wisconsin was answered by the same court in 1876, in the ease of Ole Mosness, a resident of Illinois, who made application to bfe admitted to the bar of Wisconsin. In that case the court say:
“Members of the bar are officers of the court, and in some sense officers of the state for which the court acts. If Chapter 50 (Laws of 1855) was intended to do more thin authorise the appearance here of members of the bar of other states as counsel in the trial and argument of causes, it was without the power of the Legislature.” In re Mosness, 39 Wis., 509.
The New York Court of Appeals in the case of Cooper, before referred to, use the following language:
“If the removal or suspension of an attorney be, as was held in these cases (Strother v. Missouri, 1 Mo. Reports, 605; In re Secombe, 15 Howard [U. S.], 15), a judicial act, it is difficult to see how the admission of an attorney is any the less so, espe *280 cially when, as here, the court in the act of admission is required to pass not only upon the sufficiency of the evidence of certain facts, but upon the constitutionality and the validity of a statute, and thus to exercise the highest judicial function ever entrusted to a court.”
And also the following language;
“The only rational interpretation of which the act admits is that it was intended to make the college diploma competent evidence as to the legal attainments of the applicant, and nothing else.
“The Legislature has not taken from the court its jurisdiction over the question of admission, but has simply prescribed what shall be competent evidence in certain eases upon the question.
“They (attorneys) are officers of the court, admitted as such by its order upon evidence of their possessing sufficient legal learning and fair private character. The order of admission is the judgment of the court that the parties possess the requisite qualifications as attorneys and counselors, and are entitled to appear as such and conduct the cases therein.”
The court in the Cooper case was passing upon a statute admitting to practice on a diploma of Columbia College. While the court in the case found that the power to admit is subject to legislative control the finding was based on the peculiar history of admission to the bar in New York, and after a finding by the court that the power is a judicial power and that the statute was merely a rule of evidence. The ultimate finding js opposed to the great weight of authority.
The Supreme Court of Ohio, in respondent’s case, in determining this question, say:
“It is almost universally held that both the admission and the disbarment of attorneys are judicial acts, and that one is admitted to the bar and exercises his functions as an attorney, not as a matter of right but as a privilege, conditioned on his own good behavior, and the exercise of a just and sound judicial discretion by the court.” And cites in support thereof: In re Durant, 80 Connecticut, 140; Bradwell v. Illinois, 36 Wall. (U. S.), 130; In re Day, 181 Ill., 73; In re Charles A. Thatcher, 80 O. S., 654.
*281 Basing our opinion upon the above authorities and a numher of other cases which have been examined, we are constrained to hold that the admission of attorneys is a judicial, and not a législative act, and that the power to authorize an individual to •appear as an attorney and counselor at law in the courts of this state, is a power that can not be exercised by the legislative department of the state, and that the act, by virtue of which the respondent claims the right to practice, is unconstitutional.
In arriving at this conclusion we have not failed to take into consideration the general act of the Legislature, pursuant to which citizens of the state are admitted to practice, and, after admission, they are, under certain circumstances, disbarred.
In the exercise of the police power, the Legislature probably possesses the power to prescribe qualifications for admission and grounds for disbarment. And it may prescribe the method of procedure therein. The Legislature has prescribed qualifications for admission, and has designated the tribunal which «WI] exercise the power to admit to practice, and the courts of the state, without questioning the right of the Legislature to so enact have for years operated under those provisions and it is not for this court, at this time, to question this method or procedure, or the force and effect of any judicial order made in accordance therewith. The constitutional right of the courts, however, to admit or disbar, is not surrendered by reason of the recognition by the courts of this procedure.
The order is that respondent be not permitted to practice before this court.